OPINION
{¶ 1} Appellants Hassell and Karen Tackett appeal the decision of the Fairfield County Court of Common Pleas that granted partial summary judgment on behalf of Appellees Attorneys Larry Maley and James Linehan. Appellants also appeal the trial court's decision to award only nominal damages on the issue of loss of their right to a jury trial. The following facts give rise to this appeal.
 {¶ 2} The underlying case to appellants' malpractice claim began in the spring of 1992 when appellants sought to purchase the home of Shirley Patrick located at 810 Amanda Northern Road, Lancaster, Ohio. Prior to submitting a purchase offer, appellants inspected the home on a number of occasions and discovered evidence of termite infestation. Thereafter, Patrick contacted Steve Mitchell from Fairfield Termite Pest Control to perform an inspection. During the course of his inspection, Mitchell found signs of termite infestation. When Mitchell informed Patrick of his findings and provided an estimate for the cost of treating the problem, Patrick decided to obtain a second opinion. Patrick instructed Mitchell not to volunteer any information to appellants regarding his findings.
 {¶ 3} Subsequently, Patrick hired Rick Braden, a sales manager at Ben Kitchen Termite Pest Control, Inc. to perform a second inspection. Upon his inspection, Braden discovered evidence of termites and thereafter treated the residence. During the real estate closing, Patrick fraudulently informed appellants that the residence had been treated and there was no termite damage to the property. Further, appellants were provided with a copy of the termite inspection report prepared by Braden. The section of the report for noting damages was blank. Following their purchase of the residence, appellants began remodeling the residence and discovered structural damage caused by the termite infestation.
 {¶ 4} As a result of the termite infestation and structural damage, appellants hired Appellee Attorney Larry Maley to represent them. Appellee Maley retained Appellee Attorney James Linehan as co-counsel. On April 20, 1995, appellees filed a complaint on behalf of appellants, in the Fairfield County Court of Common Pleas, against Shirley Patrick, Marie Kimberland of John Harris Realty and numerous other defendants. Upon filing the complaint, appellees did not pay the required deposit for a jury trial. Thereafter, Marie Kimberland moved for summary judgment, which the trial court granted on January 29, 1996.
 {¶ 5} At this point in the proceedings, appellants allegedly inquired of appellees about appealing the dismissal of Marie Kimberland from the case. Appellants claim appellees informed them that an appeal could not be filed because the trial court's grant of summary judgment, as to Marie Kimberland, was not a final appealable order. This matter proceeded to trial in February and March 1996. At trial, appellees did not pursue rescission of the purchase agreement as they did not believe it was an available remedy. The trial court granted directed verdicts in favor of Steven Wells, Roy Braden, Rick Brunton and HER Realty, and Steve Mitchell and Fairfield Termite Pest Control, Inc.
 {¶ 6} On July 19, 1996, the trial court granted judgment in favor of appellants in the amount of $36,000. In doing so, the trial court awarded judgments against Ben Kitchen and Termite Pest Control, Inc. for negligence and against Shirley Patrick for fraud. The trial court also determined the appellants were contributorily negligent for their failure to retain a structural engineer to inspect the residence. The trial court further ordered the judgment rendered against Ben Kitchen and Termite Pest Control, Inc. be reduced by one-third based upon the fact that appellants' own negligence contributed to their damages. The trial court did not reduce the award against Shirley Patrick because of her fraudulent conduct.
 {¶ 7} The malpractice case giving rise to this appeal originated in the Lancaster Municipal Court. Appellee C.R. Withem filed an action alleging Appellees Maley and Linehan refused to pay for an inspection he performed for appellants' residence. Withem conducted the inspection for the purpose of testifying on behalf of appellants in the underlying case. In response, Appellee Maley filed a claim against appellants alleging they were responsible for the money owed to Withem. Appellee Maley also sought unpaid attorney's fees in the underlying case. Appellee Linehan then filed a claim seeking indemnification from Appellee Maley on Withem's claim. Appellants thereafter filed a legal malpractice claim against Appellees Maley and Linehan. On October 20, 1997, the case was removed to the Fairfield County Court of Common Pleas.
 {¶ 8} On December 15, 1999, appellees filed a motion for summary judgment regarding appellants' claims for legal malpractice. Following the filing of this motion, all parties agreed to settle and dismiss all claims against C.R. Withem Enterprises. On June 5, 2000, the trial court partially granted appellees' motion for summary judgment. Specifically, the trial court granted summary judgment on the claims for failure to perfect an appeal, negligent presentation of witness testimony as to compensatory damages and failure to pursue the remedy of rescission. Thus, two claims remained for trial: legal malpractice for denial of a jury trial by failure to pay the jury deposit fee and legal malpractice for failure to convey a settlement offer.
 {¶ 9} This matter proceeded to trial on October 9, 2001. Appellants withdrew their claim for legal malpractice for failure to convey the settlement offer. After the completion of opening statements, counsel for Appellee Maley moved for a directed verdict on appellants' remaining claim. The trial court granted the motion finding Appellees Maley and Linehan liable for legal malpractice. However, the trial court only awarded nominal damages of one dollar plus court costs. Appellees Maley and Linehan dismissed their claims, without prejudice, against appellants
 {¶ 10} Appellants timely filed their notice of appeal and set forth the following assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT ERRED IN ITS DECISION TO GRANT A SUMMARY JUDGMENT IN PART TO DEFENDANTS MALEY AND LINEHAN.
 {¶ 12} "II. THE TRIAL COURT ERRED IN GRANTING ONLY NOMINAL DAMAGES TO THE APPELLEES ON THE ISSUE OF THEIR LOSS OF A RIGHT TO A JURY TRIAL."
 Summary Judgment Standard {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 14} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 16} It is based upon this standard that we review appellants' assignments of error.
 I {¶ 17} Appellants maintain, in their second issue under their first assignment of error, the trial court erred when it found there was no genuine issue of material fact as to whether appellees' failure to perfect an appeal from the dismissal of Marie Kimberland and John Harris Real Estate was legal malpractice. We disagree.
 {¶ 18} In granting summary judgment on the issue of failure to perfect an appeal, the trial court referred to a letter dated February 21, 1996, in which Appellee Maley discussed his inability to handle an appeal. The trial court found that based upon the tenor of the letter, appellants were advised of their right to appeal sometime before February 21, 1996, since Attorney Maley was declining to represent them on appeal. Thus, the trial court concluded:
 {¶ 19} "Further, construing these facts most favorably toward the Tacketts, reasonable minds could only conclude that if an attorney is discussing an appeal before the trial has concluded, both he and his clients are aware that an appeal must be taken before the trial is ended on another, separate matter." Judgment Entry, June 5, 2000, at 8.
 {¶ 20} On appeal, appellants cite their affidavit filed in opposition to summary judgment in which they claim they were advised by appellees that an appeal could not be taken until all of the claims in the litigation had been resolved. Appellants maintain that because their affidavit contradicts the language of the letter dated February 21, 1996, a genuine issue of material fact exists for trial. We find the specific facts alleged by appellants do not support such a conclusion. First, appellants do not deny that they received a copy of the letter dated February 21, 1996. Appellee Maley mailed this letter after the trial court granted partial summary judgment and prior to the conclusion of this matter at trial. Also, this letter is dated prior to the expiration of the time period within which an appeal had to be filed.
 {¶ 21} In the letter, Appellee Maley clearly informed appellants that he would not be available to perform appellate work in their case if they chose to pursue an appeal. At the time this letter was drafted by Appellee Maley, the only possible appeal available to appellants was the appeal of the trial court's partial grant of summary judgment as this matter had not yet been decided at trial. This is further supported by the fact that in a separate letter dated February 2, 1996, appellees discussed the likelihood of success of an appeal from the trial court's verdict. Although the trial was not scheduled to start until four days after the date of this letter, appellees specifically informed appellants as follows:
 {¶ 22} "You have expressed your intention to appeal any award less than a few thousand dollars. As your attorneys, we need to advise you that the chances of winning an appeal on these grounds are slim. It is very difficult to overturn a jury's verdict on the grounds that it is insufficient."
 {¶ 23} Based upon the above two letters, we find the evidence supports the conclusion that the letter dated February 21, 1996, refers to an appeal from the trial court's partial grant of summary judgment and the letter dated February 2, 1996, refers to the possible success of an appeal following a verdict. Neither of these letters indicate that the partial grant of summary judgment is not a final appealable order. The only evidence submitted by appellants to contradict this conclusion is their own self-serving affidavit in which they state, "[b]ecause Mr. Maley and Mr. Linehan had previously advised us that an appeal could not be taken until the conclusion of the case, we did not seek other counsel to appeal that decision. Affidavit of Hassell and Karen Tackett at paragraph fifteen.
 {¶ 24} However, "[a] party's unsupported and self-serving assertions offered to demonstrate issues of fact, standing alone and without corroborating materials contemplated by Civ.R. 56, are simply insufficient [to overcome a properly supported motion for summary judgment]. In other words, when the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate `the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial.'" (Citations omitted.) BankOne, N.A. v. Burkey (June 14, 2000), Lorain App. No. 99CA007359, at 10-11.
 {¶ 25} Thus, even if we found the grant of summary judgment to Marie Kimberland to be a final appealable order, appellees, as the moving party, specifically pointed to some evidence which demonstrates appellants, the non-moving party, cannot support its claim. The evidence referred to by appellees clearly supports the conclusion that appellants knew, before the expiration of the time period within which appellants had to file their appeal from the partial grant of summary judgment, that Appellee Maley would not be available to perform appellate work on their behalf. The only evidence to contradict this conclusion is appellants' self-serving affidavit. Such evidence will not suffice, under Civ.R. 56, to create a genuine issue of material fact for trial.
 {¶ 26} Appellants' second issue under their first assignment of error is overruled.
 {¶ 27} Appellants contend, in their third issue under their first assignment of error, a genuine issue of material fact exists regarding appellees' negligent presentation of witness testimony as to compensatory damages. We disagree.
 {¶ 28} Specifically, appellants maintain the evidence shows that appellees were negligent in their presentation of witnesses as to the issue of compensatory damages. Appellants also maintain the trial court erred when it dismissed their claim on the sole basis that Mr. Ucker's expert affidavit is insufficient.
 {¶ 29} Mr. Ucker stated as follows in his affidavit:
 {¶ 30} "* * * it is my opinion that Larry Maley and James Linehan committed legal malpractice in the Patrick (sic) case by failing to properly obtain and properly present sufficient expert witness testimony at trial as to the issue of the cost to repair the termite damage at the residence purchased by Mr. and Mrs. Tackett from Shirley Patrick." Affidavit of Timothy Ucker at paragraph nine.
 {¶ 31} The trial court concluded Mr. Ucker's affidavit was insufficient because:
 {¶ 32} "* * * Ucker offers no facts, no statement of what an additional expert witness might have added to the case, nor any statement as to why the witnesses who were called were deficient. More significantly, Ucker's affidavit does not state what an ordinarily competent attorney would have done which Maley and Linehan failed to do. Construing Ucker's affidavit most favorably toward the Tacketts, reasonable minds could only find that it states no facts but merely expresses a bare, conclusory opinion that the witnesses were `insufficient.' Judgment Entry, June 5, 2000, at 10.
 {¶ 33} Appellants maintain an expert's affidavit in support of a claim for legal malpractice does not have to contain statements of what an additional expert would have added to the case or a statement as to why the witnesses called were deficient. Appellants contend an expert's affidavit need only include the fact of his opinion and his or her qualifications which would make the opinion admissible. In support of this argument, appellants cite the case of Hughes v. Plastivax Inc. (June 27, 1997), Lake App. No. 96-L-174. In Hughes, the Eleventh District Court of Appeals held that while the testimony of the non-moving party's expert may or may not have been sufficient to carry that party's burden of proof at trial, the court erred in granting summary judgment where the testimony sufficed to create a factual dispute. Id. at 4.
 {¶ 34} Evid.R. 702 addresses when a witness may testify as an expert. However, this rule of evidence must be read in conjunction with Evid.R. 703 and Evid.R. 705. Specifically, Evid.R. 705 addresses the disclosure of facts upon which an expert's opinion is based. This rule provides:
 {¶ 35} "The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 36} Thus, according to Evid.R. 705, an expert witness is required to disclose the underlying facts or data he or she relied upon in reaching their opinion. In the case sub judice, the trial court concluded Mr. Ucker failed to provide the underlying facts to support his conclusion that appellees failed to obtain and properly present sufficient expert witness testimony at trial concerning the issue of the cost to repair the termite damage at the residence purchased by appellants. Upon review of Mr. Ucker's affidavit, we agree with the trial court's conclusion.
 {¶ 37} Mr. Ucker merely concludes, at paragraph nine of his affidavit, that appellees committed legal malpractice by failing to obtain and properly present sufficient expert testimony at trial concerning repair costs. Mr. Ucker, in paragraph ten of his affidavit, discloses the evidence he relied upon in reaching this conclusion. No where in Mr. Ucker's affidavit does he disclose the underlying facts or data he used in reaching this conclusion as required by Evid.R. 705. Accordingly, the trial court did not err when it concluded Mr. Ucker's affidavit was not sufficient to sustain appellants' malpractice claim concerning the negligent presentation of witness testimony regarding compensatory damages.
 {¶ 38} Appellants' third issue under their first assignment of error is overruled.
 {¶ 39} In their final issue under their first assignment of error, appellants contend a genuine issue of material fact exists regarding appellees' failure to pursue the remedy of rescission of the sale of the property. We disagree.
 {¶ 40} In its judgment entry, the trial court found the affidavits from both appellants and appellees indicate that appellees discussed the remedy of rescission but that Shirley Patrick refused to rescind the contract because she could not afford to do so. Appellants concede that Patrick refused rescission of the contract. Thus, the trial court concluded, based upon the affidavits, that rescission was not a viable option in this case. Judgment Entry, June 5, 2000, at 9.
 {¶ 41} The evidence also establishes that appellants purchased the property at issue in the early part of 1992, but did not hire Appellee Maley to represent them in this matter until September 1994. "A person who seeks the rescission of a contract, on any ground, must do so promptly upon discovering the facts that will justify such rescission, and while he or she is able, or by the judgment of the court, to place the opposite party substantially in statu quo; otherwise, the right to rescind may be lost." 13 Ohio Jurisprudence 3d (1995) Cancellation Etc. of Instruments, Section 33. Clearly, in the case sub judice, by the time appellants filed a complaint on behalf of appellees, a claim for rescission would no longer have been timely. Further, the decision of what causes of action to pursue when filing a complaint on behalf of a client involves trial strategy.
 {¶ 42} Finally, in an affidavit submitted by W. Locke McKenzie, Esq., McKenzie concludes appellees were not negligent in failing to pursue the remedy of rescission because Appellee Maley discussed rescission with appellants and appellants were not interested in rescission because of the money they had already put into improving the property. Also, Shirley Patrick was unwilling to go forward with rescission. Further, rescission is a choice of remedies that would preclude the collection of other compensatory and/or punitive damages. Based upon these facts, McKenzie concluded the claim against appellees that they improperly failed to pursue rescission is meritless. Affidavit W. Locke McKenzie, Esq. at paragraph eight. Appellants submitted no evidence to contradict McKenzie's conclusions. Therefore, the trial court properly granted appellees' motion for summary judgment as to this claim.
 {¶ 43} Accordingly, appellants' fourth issue under their first assignment of error is overruled.
 {¶ 44} Having concluded the trial court did not err when it granted summary judgment in this matter, we also overrule appellants' first argument, under their first assignment of error, that the trial court improperly applied Civ.R. 56 in granting summary judgment.
 {¶ 45} Appellants' first assignment of error is overruled.
 II {¶ 46} Appellants contend, in their second assignment of error, the trial court erred when it granted only nominal damages to appellees on the issue of their loss of right to a jury trial. We disagree.
 {¶ 47} In awarding only nominal damages, the trial court found that under Ohio law, compensatory damages for mental anguish must accompany a physical injury and must stem from a negligent act that the claimant witnessed or from an intentional tort. Judgment Entry, June 5, 2000, at 4. The trial court also refers to the case of Memphis Comm.School Dist. v. Stachura (1986), 477 U.S. 299, in which the United States Supreme Court held that damages based on the abstract "value" or "importance" of a constitutional right are not a permissible element of compensatory damages. However, some form of presumed damages may possibly be appropriate and that such presumed damages, if appropriate, may roughly approximate the harm that the plaintiff suffered. Judgment Entry, October 31, 2002, at 4-5
 {¶ 48} In support of this assignment of error, appellants contend they witnessed the fact that they did not receive a jury trial when the matter was tried to the trial court judge. Appellants argue this caused them severe and debilitating emotional distress and mental anguish. As an example, Appellant Karen Tackett took ill during an in-chamber conference. The trial court recessed the proceedings, for the morning, so Mrs. Tackett could receive medical attention. Having witnessed the trial to the bench and suffered emotional distress and mental anguish, appellants contend they were entitled to compensatory damages.
 {¶ 49} In the alternative, appellants maintain the loss they suffered was like that suffered in a defamation suit. Appellants argue the loss of their right to a jury trial is similar to the loss suffered by an injured party in a defamation suit because there does not exist any actual physical harm from which the mental anguish arises and there is no clear way for the jury to measure damages and must make a judgment based upon their view of how much the loss was worth monetarily. Thus, appellants contend the trial court should have allowed the jury to return damages for the loss of their right for a jury trial that were not speculative or abstract and the jury should have been permitted to approximate the harm the appellants suffered which were quantifiable.
 {¶ 50} Based upon our review of the evidence, we find the trial court did not err when it awarded appellants only nominal damages. In the context of a legal malpractice case, no damages for mental anguish can be recovered against an attorney absent sufficient evidence of wrongful, intentional and willful conduct. Cunningham v. Hildebrand
(2001), 142 Ohio App.3d 218, 228. Appellants presented no evidence that appellees intentionally failed to pay the required deposit for a jury trial. Further, in order to recover damages for mental anguish, it must be established that the emotional injury was both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. Paugh v. Hanks (1983), 6 Ohio St.3d 72, paragraph 3a of the syllabus. There is no evidence in the record that appellants suffered this type of mental anguish.
 {¶ 51} Further, in Carey v. Piphus (1978), 435 U.S. 247, 263, the United States Supreme Court held that in the context of denial of procedural due process, a claimant could recover compensatory damages only if he proved actual injury caused by the denial of his constitutional rights. Appellants failed to establish they suffered an actual injury from the denial of their right to a jury trial.
 {¶ 52} Accordingly, because the evidence does not support the conclusion that appellees acted intentionally in failing to pay the jury deposit fee and appellants did not suffer any actual injury, the trial court did not err when it awarded only nominal damages.
 {¶ 53} Appellants' second assignment of error is overruled.
 {¶ 54} For the foregoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed
By: Wise, J., Farmer, P.J., and Boggins, J., concur.